**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THEATRIS DENNIS HARRIS,** | ) | |
| | ) | |
| | ) | **Civil Action No. 11-4245** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CAVALRY PORTFOLIO SERVICES,** | ) | |
| **LLC d/b/a NEW CENTURY** | ) | |
| **FINANCIAL SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

1.      This is an action for damages brought by an individual consumer against Cavalry Portfolio Services, LLC, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA"), the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. §§ 2270.1 *et seq*. ("FCEUA"), constituting unfair and deceptive acts and practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*., ("UTPCPL"), and for abuse of process.

## PARTIES

2.      Plaintiff Theatris Dennis Harris is an adult individual and citizen of the State of Pennsylvania residing at 4949 Sansom Street, Philadelphia, PA 19139.

3.      Defendant Cavalry Portfolio Services, LLC ("Cavalry") is a business entity doing business as New Century Financial Services ("New Century"), regularly engaged in the business of collecting debts in Philadelphia County, and which has a principal place of business located at 7 Skyline Drive, Hawthorne, NY 10535. The principal purpose of Cavalry is the collection of

debts using the mails and telephone, and Cavalry regularly attempts to collect debts alleged to be due another.

## JURISDICTION & VENUE

4.      Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

6.      At all pertinent times hereto, Defendant Cavalry was hired to collect a debt relating to an MBNA credit card that was opened as a result of identity theft committed by Plaintiff's ex-wife (hereafter the "debt").

7.      The debt at issue arises out of a series of transactions which were primarily for personal, family or household purposes.

8.      At all times material and relevant hereto, Plaintiff did not owe the debt at issue.

9.      In or around 2004, Plaintiff began receiving telephone calls from Cavalry in an attempt to collect the debt.  Upon receiving the first telephone call from Cavalry Plaintiff advised that he had no knowledge of the debt and that he believed the account was opened as a result of identity theft committed by his ex-wife and requested that Cavalry refrain from contacting him any further regarding the debt.

10.     Notwithstanding the above, Plaintiff estimates that Cavalry continued to contact Plaintiff approximately 50 more times by telephone in an attempt to collect the debt with the intent to annoy, abuse and harass Plaintiff. Plaintiff estimates that on at least fifteen more occasions, he advised Cavalry's representatives that the account was the result of identity theft and to refrain from contacting him any further.

2

11.     Notwithstanding the above, on or about April 4, 2005, Cavalry operating as New Century caused a lawsuit to be filed against Plaintiff in the Superior Court of New Jersey, Camden County, Special Civil Part, Docket Number 05-4824, (the "Lawsuit"), wrongfully seeking to collect the debt from Plaintiff.   At that time, Plaintiff resided in Philadelphia, Pennsylvania.

12.     In connection with filing the lawsuit, Cavalry filed service of process purporting to complete service by at an address in Lawnside, New Jersey at which Plaintiff had not lived since 1999.  Plaintiff as such was never validly served with process in connection with the lawsuit.

13.     Cavalry further did not even communicate with Plaintiff regarding the debt prior to filing the lawsuit, to advise that a lawsuit had been filed.

14.     Cavalry lacked probable cause to file the lawsuit because Defendant knew or should have known that Plaintiff was not responsible for the debt.

15.     Cavalry's filing of the lawsuit served no purpose other than to harass Plaintiff in order to force him to pay a debt that was not his responsibility.

16.     On or about June 30, 2005, Cavalry moved for a default judgment in the Lawsuit again without serving Plaintiff with any notice of its intent to seek a default judgment.

17.     On or about September 20, 2005, a default judgment was entered based upon Cavalry's false certification that Plaintiff had been served with process.

18.     On or about August 29, 2006, Cavalry then confessed the foreign judgment from New Jersey in the Commonwealth of Pennsylvania again without providing Plaintiff with notice of the proceeding.

19.     Thereafter, on or about May 8, 2008, Cavalry then wrongfully attempted to execute upon a PNC Bank account via a writ of attachment belonging to Plaintiff's deceased father.  Plaintiff contacted Cavalry's attorneys, Gordon & Weinberg, P.C., in connection with the attempted attachment and advised that the debt at issue did not belong to his father and the debt was the result of identity theft committed by his ex-wife. Cavalry's attorney's advised Plaintiff that Cavalry intended to collect on the debt regardless of the fact that it was result of identity theft, that they had his social security number, and that they were "coming after him."

20.     Notwithstanding the above, on or about May 5, 2009, Cavalry then wrongfully attempted to execute upon a purported HSBC bank account via a writ of attachment. Plaintiff, however, received no notice from Cavalry of its attempt to execute upon accounts at HSBC.

21.     Notwithstanding the above, on or about April 6, 2011, Cavalry then wrongfully attempted to execute upon a TD Bank account via a writ of attachment that belonged jointly to both Plaintiff and his wife in violation of Pennsylvania collection laws.  Furthermore, as a result of the wrongfully served writ of attachment Plaintiff and his wife's account was in fact levied, depriving Plaintiff and his wife of use of the funds in the account and causing Plaintiff and his wife to incur charges from the bank for the attachment proceedings.

22.     Cavalry acted in a false, deceptive, misleading and unfair manner by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

23.     Cavalry acted in a false, deceptive, misleading and unfair manner by misrepresenting the amount, character or legal status of the debt.

24.     Cavalry acted in a false, deceptive, misleading and unfair manner by threatening to take legal action that cannot legally be taken.

4

25.    Cavalry acted in a false, deceptive, misleading and unfair manner bringing legal action on a debt against a consumer in a judicial district other than where the consumer resides at the commencement of the action.

26.    As a result of Cavalry's conduct, Plaintiff has sustained actual damages, including, but not limited to injury to Plaintiff's reputation, invasion of privacy, damage to Plaintiff's credit, out-of-pocket expenses, emotional and mental pain and anguish, embarrassment, humiliation, damage to reputation and pecuniary loss and he will continue to suffer same for an indefinite time in the future, all to her great detriment and loss.

27.    Cavalry knew or should have known that its respective actions violated the FDCPA, FCEUA and state law as set forth below.  Additionally, Cavalry could have taken steps necessary to bring it and its agents' actions within compliance of the FDCPA, FCEUA and state law but neglected to do so and failed to adequately review those actions to insure compliance with said laws.

28.    At all times pertinent hereto, Cavalry was acting by and through its agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the Defendant herein.

29.    At all times pertinent hereto, the conduct of Cavalry as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

<u>**COUNT I – VIOLATIONS OF THE FDCPA**</u>

30.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

31.    Defendant Cavalry is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

32.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

33.     The above contacts by Cavalry were "communications" relating to a "debt" as defined by 15 U.S.C. § 1692a(2) and 1692a(5) of the FDCPA.

34.     Cavalry violated the FDCPA.  Defendant's violations include, but are not limited to, violations of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692i as evidenced by the following conduct:

> (a) Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt;
>
> (b) The false representation of the amount, character or legal status of a debt;
>
> (c) Threatening to take legal action that cannot legally be taken;
>
> (d) Bringing legal action on a debt against a consumer in a judicial district other than where the consumer resides at the commencement of the action; and
>
> (e) Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect the alleged debt from the Plaintiff.

35.     Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay the alleged debt.

36.     As a result of the above violations of the FDCPA, Cavalry is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

## COUNT II – VIOLATIONS OF THE FCEUA AND UTPCPL

35.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

37.     Defendant Cavalry is a "debt collector" as defined by 73 P.S. § 2271.3 of the FCEUA.

38.     Plaintiff is a "consumer" as defined by 73 P.S. § 2271.3 of the FCEUA.

39.     The above contacts by Cavalry and disputes by Plaintiff are "communications" relating to a "debt" as defined by 73 P.S. § 2271.3 of the FCEUA.

40.     Cavalry engaged in unfair methods of competition and unfair or deceptive acts or practices, as defined by the UTPCPL, by attempting to collect the debt in violation of the FCEUA.  Defendants' violations of the FCEUA and UTPCPL include, but are not limited to, violations of 73 P.S. § 2270.4(a) and (b), as evidenced by the following conduct:

> (a) Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt;
>
> (b) The false representation of the amount, character or legal status of a debt;
>
> (c) Threatening to take legal action that cannot legally be taken;
>
> (d) Bringing legal action on a debt against a consumer in a judicial district other than where the consumer resides at the commencement of the action; and
>
> (e) Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect the alleged debt from the Plaintiff.

41.     Cavalry's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay the debt.

42.     As a result of the above violations of the FCEUA and UTPCPL, Plaintiff has suffered ascertainable losses entitling Plaintiff to an award of statutory, actual and treble damages and attorney's fees and costs.

43.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

## COUNT III – ABUSE OF PROCESS

44.     Cavalry instituted a civil proceeding against Plaintiff as stated more fully above.

45.     Thereafter, having knowledge that the underlying debt was the result of identity theft, Cavalry in a knowing and wrongful manner proceeded to execute on the judgment against Plaintiff via a writ of attachment against Plaintiff's assets.

46.     Cavalry used the execution and attachment proceedings in this manner for a wrongful purpose for which the proceedings were not designed to accomplish including but not limited to harassing Plaintiff and involuntarily forcing Plaintiff into paying for a debt for which he was not responsible to pay.

47.     Cavalry as such acted in a knowing, willful, reckless, malicious and/or grossly negligent manner for purposes other than adjudicating the claims for which the proceeding were brought as described above.

48.     The conduct of Cavalry was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above.

## JURY TRIAL DEMAND

49.     Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the

Defendants, based on the following requested relief:

      (a)     Actual damages;

      (b)     Statutory damages;

      (c)     Treble damages;

      (d)     Punitive damages;

      (e)     Costs and reasonable attorney's fees; and

      (f)     Such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

**FRANCIS & MAILMAN, P.C.**


BY:    */s/ Mark Mailman*
         MARK MAILMAN, ESQUIRE
         GREGORY GORSKI, ESQUIRE
         Land Title Building, 19th Floor
         100 South Broad Street
         Philadelphia, PA 19110
         (215) 735-8600

         Attorneys for Plaintiff

Dated:  June 29, 2011